FIELDSTONE INVESTMENT CORPORATION

v.

SID R. BASS MANAGEMENT TRUST, et al.

No. CIV. JFM–04–1707.

United States District Court, D. Maryland.

Oct. 14, 2004.

Mark D. Gately, Jennifer Kathryn Squillario, Hogan and Hartson LLP, Baltimore, MD, Michele Walls Sartori, Hogan and Hartson LLP, Washington, DC, for Plaintiff.

William L. Kirkman, Bourland Kirkman Seidler Jay and Michel LLP, Ft. Worth, TX, Daniel P. Moylan, John J. Connolly, William J. Murphy, Murphy and Shaffer LLC, Baltimore, MD, for Defendants.

## MEMORANDUM

MOTZ, District Judge.

This is a declaratory judgment action instituted by Fieldstone Investment Corp. ("Fieldstone") against thirty-one persons and entities (collectively "the Bass Group") that previously held 95% of the shares in Fieldstone. The underlying issue presented is whether the terms of a Redemption Agreement entitle the Bass Group to receive a substantial increase in the price for the stock they relinquished as part of a series of financial transactions between the parties. The question now pending before me, however, is whether this action should be dismissed or stayed in favor of an earlier action instituted by the Bass Group against Fieldstone in a Texas state court.[1] For the reasons that follow, I have concluded that the entry of a stay is appropriate.

## I.

The Redemption Agreement provided that the shares held by the Bass Group in Fieldstone were to be redeemed for a base purchase price of $13.95 per share. This price was subject to a post-closing adjustment based in part upon the net worth of Fieldstone's predecessor (Fieldstone Holdings, Inc.) as of the close of business on the date prior to the stock redemption. The Agreement further provided that KPMG LLP ("KPMG") would conduct an audit of Fieldstone's consolidated balance sheet as of that date, and that Fieldstone "shall prepare the Closing Balance Sheet in accordance with accounting principles generally accepted in the United States." KPMG conducted an audit and issued a report on January 12, 2004. However, it has now withdrawn that report and informed the parties that it cannot be relied upon.

The parties' dispute concerns whether, in accordance with generally accepted accounting principles, Fieldstone was required to include in the Closing Balance Sheet a multi-million dollar asset of its operating subsidiary for deferred taxes and whether KPMG should be required to issue a new audit report taking that asset into account. The value of the deferred tax asset is estimated at $14 to $18.8 million dollars, based on Fieldstone's audit and financial statements for the year ending December 31, 2003.

1. In the original petition filed in Texas, plaintiffs were described as 820 Management Trust et al and were defined as a group of thirty-one individuals and entities. On June 16, 2004, the original petition was amended to separately identify each member of the Bass Group as a named plaintiff. These named plaintiffs in the Texas action are the same individuals and entities named as defendants in this action.

On May 21, 2004, the Bass Group filed a petition in Texas state court against Fieldstone and KPMG. The Bass Group alleges in that action that the Closing Balance Sheet and KPMG's initial audit report erroneously failed to include the deferred tax asset, and that the balance sheet and audit report were not prepared in accordance with generally accepted accounting principles. In the Texas action, the Bass Group seeks an order requiring Fieldstone to prepare a corrected Closing Balance Sheet and KPMG to issue a corrected audit report. The Bass Group also seeks declaratory relief and a judgment in the amount it alleges is owed to the selling stockholders.

The Bass Group effected service on Fieldstone by delivering a copy of the suit papers upon the Texas Secretary of State. On May 24, 2004, counsel for the Bass Group confirmed that the Secretary of State had received the papers. The same day, counsel for the Bass Group called Fieldstone's counsel to advise him of the filing of the action and faxed to Fieldstone's counsel a copy of the petition. Approximately two weeks later Fieldstone filed this action in this court.

## II.

The Anti–Injunction Act ("AIA") provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Although the AIA applies by its terms only to injunctions, the Fourth Circuit has held that the granting of declaratory relief also falls within the AIA's ban if the granting of such relief would have the same impact as an injunction. *See Denny's, Inc. v. Cake,* 364 F.3d 521, 531 & n. 8 (4th Cir.2004). Here, because there is a complete overlap of the

issues, the granting of the declaratory relief requested by Fieldstone in this action would be tantamount to staying the proceedings in the Texas action. Therefore, because the granting of the relief sought by Fieldstone is not authorized by an Act of Congress or necessary to protect or effectuate a judgment issued by this court or to aid its jurisdiction, the AIA appears to apply.

■ Fieldstone notes that *Denny's, Inc. v. Cake* is distinguishable on the ground that there the declaratory relief sought by plaintiff directly implicated a state's legal regime. Although that factor certainly weighs heavily in favor of a court not interfering with ongoing state proceedings, the language of the AIA does not itself draw the distinction Fieldstone seeks to make. I need not decide, however, whether the AIA prohibits the granting of declaratory relief where a state's legal regime is not directly implicated because, assuming that the AIA is not applicable in such a context, I nevertheless would exercise my discretion under 28 U.S.C. § 2201(a) not to entertain this action. *See generally Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493 (4th Cir. 1998); *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256 (4th Cir.1996).

■ The Fourth Circuit has articulated four factors a court should consider in deciding whether to exercise its discretion to grant declaratory relief:

(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entangle-

ment" between the federal and state court systems, because of the presence of "overlapping issues of fact or law;" and (iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

*Centennial Life,* 88 F.3d at 257 (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 376 (4th Cir.1994)).

The first of these factors—the strength of Texas' interest in having the issues raised in this action decided in Texas state courts—arguably weighs slightly in favor of proceeding in this court. The Redemption Agreement provides that it is to be governed by Maryland law, and Fieldstone is a Maryland corporation with its principal place of business in Maryland. However, all of the members of the Bass Group are citizens of Texas.[2]

The other three factors outlined in *Centennial Life,* strongly favor deferring to the Texas action and declining to issue declaratory relief here. For at least two reasons, the issues can be more efficiently resolved in Texas than they could be here. KPMG is clearly subject to jurisdiction in Texas whereas its attempted joinder here (as a counter defendant) would raise debatable issues that would have to be extensively briefed. Moreover, the very existence of the question whether this action can be maintained under the AIA weighs in favor of giving precedence to the Texas action. Were I to entertain this action and decide that the AIA does not prohibit the granting of declaratory relief but this ruling were reversed on appeal, all of the proceedings in this court would have been for naught. Injecting such uncertainty and potential inefficiency into litigation is not in the public interest.

Likewise, permitting this action to go forward unquestionably "would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law." *Centennial Life,* 88 F.3d at 257 (internal quotations omitted). Fieldstone does not even attempt to contend to the contrary. Finally, it appears clear that this action "is being used merely as a device for procedural fencing." *Id.* The

2. Characterizing the underlying contractual issues as routine in nature, Fieldstone seeks to bring this case within the ambit of the black letter rule that a state court has a diminished interest in hearing a case in which "the issues involved are standard ones of … contract interpretation," *United Capitol Ins. Co.,* 155 F.3d at 494, in contrast to ones that are "problematic or difficult to apply." *Centennial Life Ins. Co.,* 88 F.3d at 258. Fieldstone's approach evidences the fallacy of citing legal propositions without considering their history and purpose. The rule upon which it relies developed in the context of selecting between a federal court and a court of the state whose substantive law is governing. Thus, it would be applicable here if the choice were between an action in a Maryland court and an action in this court and if the Bass Group were seeking priority for the Maryland forum on the basis that Maryland law applies. In that event, the fact that the underlying contractual issues allegedly are routine rather than novel would undercut the Bass Group's position. However, that is not the situation, and Fieldstone is attacking a proverbial strawman. The Bass Group is seeking priority for a Texas forum and is making no contention that this priority rests upon the applicability of state law. Indeed, if the contractual issues are "standard ones," as Fieldstone asserts, this might be considered to be a tangential factor weighing against proceeding with the litigation in this court. Conceivably it might be argued that a federal court sitting in Maryland has a stronger interest than does a Texas court in resolving "*problematic* " or "*difficult* " issues of Maryland law. It has no greater interest than does a Maryland state court in resolving issues of Maryland law that are routine.

action instituted by the Bass Group in Texas has temporal priority, and the institution of this action is a transparent attempt by Fieldstone to litigate in a forum more to its liking.

A separate order staying this action and closing it administratively is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this 14th day of October 2004

ORDERED

1. Defendants' motion to dismiss or to stay further proceeding is treated as a motion to stay and, as such, is granted;

2. This action is stayed; and

3. This action is administratively closed, subject to being reopened for good cause shown.